***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Phillips, along with the briefs and arguments on appeal. Accordingly, the Full Commission AFFIRMS IN PART AND MODIFIES IN PART the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On March 6, 2002, the date of the admitted injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act wherein plaintiff was performing his duties as a truck driver when he was putting a set of trailers together and his foot slipped and he fell injuring his back.
2. On said occasion, the employee-employer relationship existed between the plaintiff and the defendant-employer with the employer being self-insured.
3. On said occasion, plaintiff's average weekly wage was $1450.65, yielding a maximum workers' compensation rate of $654.00 per week.
4. All Industrial Commission forms, orders and decisions are entered into evidence as stipulated Exhibit 2 by stipulation of the parties, including but not limited to the following:
a. Form 19 dated 3-6-02.
b. Form 18 dated 5-6-02.
c. Form 60 dated 5-14-03.
d. Form 33 dated 7-3-03.
e. Form 33R, undated.
5. The medical records and the medical records index was received into evidence and stipulated as Exhibit 1, including medical records from the following:
1. Jerry A. Kotulla, M.D.
2. Duff A. Rardin, M.D.
3. Asheville Cardiology Associates
4. J. Robert Anderson, M.D.
5. Robert Jolley, M.D.
6. Laura B. Fleck, M.D.
7. Mountain Neurological Center/Dr. Jolley, Dr. Sims, Dr. Leetz
8. Sisters of Mercy Urgent Care
9. Jay C. Jansen, M.D.
10. Mission's. Joseph's Hospital
6. The parties also stipulated a prescription list as Plaintiff's Exhibit 3 that is hereby received into evidence.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a 51-year-old individual who had an eleventh grade education at the time of the hearing before the Deputy Commissioner. On March 6, 2002 plaintiff sustained an injury by accident arising out of and in the course and scope of his employment duties as a truck driver when he was putting a set of trailers together and his foot slipped and he fell, injuring his back.
2. At the time of the injury the plaintiff was earning an average weekly wage of $1,450.65, which yields the maximum compensation rate of $654.00 per week. Pursuant to a Form 60 entered into by the parties on May 14, 2003, plaintiff continues to draw ongoing temporary total disability benefits.
3. On the date of injury the plaintiff had been employed by the defendant-employer for approximately 10 years as an over-the-road truck driver, which required him to drive 4-5 days per week away from home for approximately 10 hours per day. During such trips away from home, he would sleep in bunkrooms provided by the employer or in motels. When plaintiff returned home, he would be off the road 8-36 hours before being re-dispatched on a new trip. Prior to working for defendant plaintiff worked 19 years for Blue Ridge Trucking.
4. On March 27, 2002 plaintiff was seen by neurosurgeon Dr. Larry Schulhof. Plaintiff reported that he had fallen during the course of his employment. Dr. Schulhof recommended that plaintiff undergo a decompressive lumbar laminectomy with inner body fusion at L5-S1.
5. At the request of defendant, plaintiff underwent a second opinion by Dr. Mark Moody of Spine Carolina who reported additional physical therapy would not be beneficial and concurred with the decompressive fusion and instrumentation as recommended by Dr. Schulhof.
6. On June 10, 2002 plaintiff underwent an L5-S1 lumbar laminectomy, diskectomy, and inner body fusion with instrumentation by Dr. Schulhof. After surgery, on June 16, 2002, plaintiff had severe aching pain in his posterior thigh radiating into his calf bilaterally, which was different than his preoperative symptoms. He continued post-surgical physical therapy that included walking, aquatic therapy, and therapeutic exercises at the recommendation of Dr. Schulhof. Thereafter, plaintiff continued to suffer from continued pain and burning in both legs in spite of ongoing physical therapy.
7. On August 19, 2002, plaintiff complained to his therapist that he continued to have pain, was having difficulty sleeping, was constantly irritable, and was frustrated with the progress in his therapy activities. Plaintiff continued physical therapy without significant success or alleviation of his continuing low back and leg symptoms. By September 16, 2002, his physical therapist noted plaintiff was unable to sleep for more than approximately 2 hours per day, was having difficulty performing many daily functional activities, was reported to have nervous energy all the time, and was requesting to speak with a psychiatrist.
8. On September 20, 2002, plaintiff and defendant's rehabilitation nurse met with the occupational therapist at which time it was reported that plaintiff had continued burning sensations in both lower extremities, reported sleeplessness at night, anxiety, and feeling agitated more frequently. The occupational therapist reported all parties agreed it was appropriate that "the plaintiff be initiated into a psychiatric consult if this is authorized by the workers' compensation adjuster." Authorization was requested for the psychiatric consultation, but the defendant rejected it.
9. On October 16, 2002, plaintiff was noted to have improved due to initiation of a prescription of Neurontin. Upon follow-up office visit, Dr. Schulhof released plaintiff to return to work on light-duty as of October 17, 2002. Plaintiff was reported initially apprehensive about returning to work, however, upon being advised he would be entitled to temporary partial disability benefits, Dr. Schulhof reported "he was more than amiable to considering doing light-duty work to get him back into the flow of work duty." Plaintiff testified he needed only 3 years of additional service to obtain full retirement benefits of $2,500.00 per month, with medical insurance to the age of 65. Without the additional 3 years of service his retirement would be significantly reduced to $700.00 per month.
10. Plaintiff attempted to return to work on light-duty with accommodations provided by his employer but was unsuccessful. On October 30, 2002, plaintiff was again taken out of work by Dr. Schulhof due to an increase in his pain level.
11. As recommended by his physical therapist in September, plaintiff was evaluated by psychiatrist Dr. Robert Jolly on November 5, 2002. In addition to reporting his initial injury and the surgical intervention and the return of continued back and bilateral leg problems, Dr. Jolly also reported plaintiff "expresses extreme frustration with his pain disability and his sense of being treated cavalierly by the workers' compensation carrier, who he feels may have contributed to his lack of recovery by the delay in his treatment." Dr. Jolly observed plaintiff was restless throughout the interview, shifting his position frequently due to pain and noted to express significant frustration in his inability to work and lack of interest in things. He was also observed to demonstrate a fair amount of frustration and anger in his perceived treatment by the workers' compensation carrier. Dr. Jolly diagnosed major depression and prescribed Lexipro for plaintiff's depressive symptoms, Neurontin for his increased irritability, and Remeron Zyprexa for chronic pain treatment. Dr. Jolly recommended ongoing psychiatric counseling.
12. At the request of the defendant's adjuster, plaintiff underwent a medical evaluation by Dr. Laura Fleck of Spine Carolina on November 15, 2003 and was reported to be anxious, talkative, and cooperative. Plaintiff changed positions frequently and had ongoing complaints that are consistent with bilateral lumbosacral ridiculalgia. He was recommended to undergo a MRI scan and EMG studies of his left leg. At that point he was also referred to Dr. Jerry Kotulla, a pain management specialist. Dr. Fleck noted "[p]laintiff may be a candidate for a spinal cord stimulator" and further noted "if need be, additional coping skills may be provided by behavioral therapists, in an effort to assist his ability to tolerate work."
13. Plaintiff returned to see Dr. Fleck on December 18, 2003. Dr. Fleck reported since plaintiff's last visit, he had had a very difficult time, was tearful, and stated that he was depressed. His pain complaints were not improved and he was only able to get through his day by lying in a recliner. Plaintiff had been seen by Dr. Kotulla who had given him an RMS muscle stimulator that had provided assistance with plaintiff's back pain but not his leg pain. Dr. Fleck observed and noted, "the patient appears depressed, he also is slightly tearful." She also noted he had severe postural dysfunction and was very deconditioned with diminished sensation in the bilateral medial calves with hyperesthesissias on the left. She also noted "he shows no pain behavior with 0/5 Waddell signs though he does look depressed." Based on examination, Dr. Fleck reported plaintiff suffered from bilateral lumbosacral ridiculalgia, myofascial gluteal findings, deconditioning, significant interruption in activities of daily living and ability to work, severe impairment in sleep, and potential depression and difficulty in coping with ongoing symptoms." Based on her examination, defendant's own selected physician stated "I would support his referral for psychological intervention and would ask that they address cognitive skills for pain control, once his depression care is completed." Dr. Fleck thereupon provided plaintiff with a referral slip for psychological evaluation and cognitive therapy once his depression was addressed.
14. Dr. Jerry Kotulla also indicated in his opinion many patients are helped with a few sessions of psychological evaluation and treatment with a specialist to deal with pain patients because of problems in adjusting to a permanent and sometimes disabling injury. He stated, "I felt Mr. Lindsey could benefit from going through a Corps Program, and that would include benefits from psychological aspects of the program."
15. Plaintiff thereafter sought authorization to proceed with the psychological counseling as recommended by Dr. Jolly and Dr. Fleck. Such request was denied by the defendant in spite of the recommendations of their authorized physical therapist, Dr. Fleck, and Dr. Jolly. At the time of such denial, defendant did not possess any medical or psychiatric opinions to justify the denial.
16. On January 3, 2003, plaintiff came under the care of Dr. Gregory Sims, a licensed psychologist at the referral of Dr. Jolly. Dr. Sims continued to note complaints of increasing depression, irritability, lack of coping, stress due to inability to perform physical activities as a result of his job injury, and significant problems with chronic pain and depression. Based on his psychological examination, Dr. Sims noted anhedonia, which he described as the lack of enjoyment of past enjoyable activities; sleep disturbance, anxiety, and significant irritability. Dr. Sims formed a diagnosis of depression secondary to plaintiff's March 2002 work injury.
17. Dr. Sims has continued to treat plaintiff for depression secondary to his back injury and chronic pain. While Mr. Lindsey reported other stresses including disability of his son and the death of his mother he testified these were not permanent psychological issues for which he never undertook treatment. Based on his evaluation and treatment Dr. Sims testified, "the cause of his depression was his disability, his chronic pain, and his inability to function and carry on a life as he had previously known." Dr. Sims further testified such depression "was the result of his injury from 2002, his back injury."
18. Upon the retirement of Dr. Jolly, plaintiff came under the treatment of Dr. Kenneth Leetz, a board certified psychiatrist for over 20 years. Upon psychiatric examination, Dr. Leetz reported plaintiff was in an irritable mood, had feelings of sadness much of the time, experienced irritability, crying, disturbed sleep, decreased memory, and loss of sexual interest. Dr. Leetz testified based on his personal observations. Plaintiff's presentation was consistent with his complaints. Based on his review of prior records including Dr. Jolly's and Dr. Sims' treatment notes, and based on his personal interview and observations, in his psychiatric opinion, Dr. Leetz testified that plaintiff suffered from severe clinical depression as well as somatoform pain disorder. Dr. Leetz described somatoform pain disorder as physical pain that is exacerbated or worsened by a coexisting psychiatric condition, which in plaintiff's case was depression.
19. Dr. Leetz testified in his opinion as a board certified psychiatrist that the plaintiff's depression and somatoform pain disorder resulted from the accident he had in March 2002, and that his current pain seemed to be the major contributor to his clinical depression. Dr. Leetz continued to treat plaintiff for medication evaluations and on March 2, 2004 stated "I think he has psychiatrically reached maximum medical improvement," which his testimony explained "I did not feel at that time that psychiatrically there could be much more that would improve his condition." Based upon this, Dr. Leetz testified that in his opinion plaintiff was unable to work and most likely would be unable to return to competitive employment at any time in the foreseeable future.
20. Both Dr. Sims and Dr. Leetz had the opportunity to completely review the independent psychological report and testing performed by Dr. Terrence Fitzgerald. Both Dr. Sims and Dr. Leetz testified that the information contained in this report, while helpful in forming hypotheses, did not change their opinions that plaintiff's work related injury of March 2002 was the cause of his depression and other psychological problems.
21. On April 15, 2002 plaintiff came under the treatment of Dr. Margaret Burke of Mountain Neurological Center upon the referral of Dr. Schulhof. Based on a review of the plaintiff's medical history and testing, Dr. Burke diagnosed plaintiff with chronic pain syndrome and reported, "he seems to be highly motivated and desires to return to substantial gainful employment." Upon completion of a functional capacity evaluation, Dr. Burke authorized plaintiff to attempt to return to work in a job "assisting the supervisor" provided by the employer. Plaintiff attempted this work activity and returned to Dr. Burke on May 19, 2003 at which time she removed him from work stating, "he had failed a trial return to work. He is medically unable to work."
22. Upon reexamination on May 29, 2003 Dr. Burke noted plaintiff appeared to have constant pain which was unaffected by his medication and that his prognosis was poor. On July 7, 2003, Dr. Burke reported Plaintiff "is at MMI and has sustained a PPI of 30% of the back. He still has incapacitating pain and will need ongoing pain management." By a medical questionnaire dated August 26, 2003, and stipulated into the medical record, Dr. Burke stated that in her opinion plaintiff was incapable of sustained competitive employment and she recommended he file for Social Security Disability benefits. In a medical questionnaire dated September 23, 2003 Dr. Burke stated in her opinion plaintiff suffered from ongoing depression secondary to his chronic pain and she recommended continued psychological treatment and counseling with Dr. Sims to provide relief from the depressive symptoms related from his back injury and resulting chronic pain.
23. Prior to his injury on March 6, 2002, plaintiff had sustained a previous cervical injury for which he had undergone a C6-7 fusion on May 29, 1997 and subsequent surgeries under the care of Dr. Ralph Loomis, Dr. Schulhof's partner. Stipulated medical records indicate plaintiff was released to return to work without limitations as of June 29, 1998, at which time Dr. Loomis indicated plaintiff retained a 15% permanent partial impairment rating to his neck.
24. Dr. Anderson, plaintiff's family doctor, testified he had treated plaintiff for a variety of problems prior to his date of injury including sporadic neck pain, blood pressure problems, cholesterol problems, and several heart attacks. However, Dr. Anderson testified at no time prior to March 6, 2002 did he ever diagnose anxiety or depression, nor did he ever prescribe any medications for the treatment of anxiety or depression.
25. After his back injury, Dr. Anderson continued to treat plaintiff and on September 26, 2002 noted, "the pain is causing him a great deal of anxiety and almost depression over it" which Dr. Anderson explained in his testimony "this is a gentleman who is very much anxious about not being at work. He wanted to be at work and he was worrying about his finances." Based on this assessment, Dr. Anderson started plaintiff on medication for anxiety and depression, as well as initiating medication to treat neuropathic pain.
26. Upon recheck on October 11, 2002, Dr. Anderson reported "Mr. Lindsey is completely and totally disabled from work due to his chronic pain and even to the point of severe anxiety and depression." Dr. Anderson wrote a letter dated January 29, 2003 in which he reported plaintiff's ongoing medical problems and also stated "the patient has also struggled with difficulty with anxiety and depression," which Dr. Anderson testified did not exist prior to the March 6, 2002 injury. Dr. Anderson also testified that referral and treatment by Dr. Jolly and Dr. Sims was reasonably appropriate for treatment of plaintiff's anxiety and depression.
27. Prior to the hearing before the Deputy Commissioner, plaintiff underwent a psychological evaluation on February 16, 2004 at the request of defendant with Dr. Terrence Fitzgerald, a licensed psychologist. After his initial evaluation and testing, Dr. Fitzgerald reported that the plaintiff suffered from pre-morbid/pre-existing depression based on the medical reports of Dr. Anderson. However, in light of Dr. Anderson's testimony that he never diagnosed or treated plaintiff for depression prior to March 6, 2002, Dr. Fitzgerald's opinions are given limited weight.
28. Defendant denied authorization for plaintiff's psychological treatment and prescriptions in spite of the opinion and recommendations of Dr. Fleck who was specifically selected by defendant.
29. Defendant refused to authorize psychological treatment even though three doctors stated that plaintiff's psychological symptoms were causally related to the compensable injury and that treatment was necessary. Furthermore, defendant's own rehabilitation nurse sought authorization for psychological treatment. Defendant's denial of psychological treatment was unreasonable and constitutes unfounded litigiousness.
30. Plaintiff's attorney submitted an affidavit stating the tasks undertaken in defending defendant's appeal before the Full Commission and identifying 20 hours as the amount of time plaintiff's attorney spent completing the tasks required.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable back injury on March 6, 2003 and as a result underwent lumbar fusion surgery. Plaintiff thereafter developed chronic pain syndrome, anxiety, depression, and somatoform pain disorder as a direct and proximal result of the compensable injury. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable back injury and resultant chronic pain and psychological problems, plaintiff is entitled to temporary total disability compensation at the rate of $654.00 per week from March 6, 2003 until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. The treatment and prescriptions provided by Drs Jolley, Sims, Leetz and Anderson for plaintiff's psychological problems were reasonably necessary to effect a cure, give relief or lessen the disability from his psychological conditions. N.C. Gen. Stat. § 97-25.
4. Defendant's refusal of plaintiff's psychological treatment was unjustified, unreasonable, and constituted unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
5. Plaintiff is entitled to an attorney fee assessed against defendant pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendant shall pay plaintiff $654.00 per week from March 6, 2003 and continuing until further order of the Commission.
2. Defendant shall provide all medical care reasonably related to plaintiff's compensable injury by accident.
3. A reasonable attorneys fee in the amount of twenty-five percent of the compensation awarded plaintiff under this opinion and award is approved for plaintiff's counsel. Twenty-five percent of the accrued amount shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
4. A reasonable attorney's fee in the amount of $4,000.00 is hereby approved for plaintiff's counsel and taxed against the defendant pursuant to N.C. Gen. Stat. § 97-88. Said attorney fee shall be paid by defendant in a lump sum directly to plaintiff's counsel.
5. A reasonable attorney's fee in the amount of $2,500.00 is hereby approved for plaintiff's counsel and taxed against the defendant pursuant to N.C. Gen. Stat. § 97-88.1. Said attorney fee shall be paid by defendant in a lump sum directly to plaintiff's counsel.
6. Defendant shall bear the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER